## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

PRATT CORRUGATED HOLDINGS, INC.,

     Plaintiff,

v.                                Case No. 8:23-cv-1825-WFJ-AEP

PORTER PIZZA BOX OF OHIO, LLC f/k/a
Star Pizza Box of Ohio, LLC, and
JOHN DOES 1-25,

     Defendants.

_____/

## ORDER

Before the Court is the motion to dismiss filed by Defendant Porter Pizza Box of Ohio, LLC ("Porter OH") (Dkt. 21), Plaintiff's response (Dkt. 24), and Defendant's reply (Dkt. 25). The Court concludes that the amended complaint (Dkt. 18) is sufficient to withstand dismissal and denies the motion.

## I.    BACKGROUND

In August 2023, this case was transferred from the Southern District of Ohio. Dkt. 33. The Ohio court found that Florida is a proper and more suitable forum under 28 U.S.C. § 1404(a) for the parties and witnesses in this case. *Id*. In addition to convenience, the controlling member of Porter OH—Halden ("Hal") Porter—lives in the Florida Middle District, and he consented to being sued in Florida. *Id*. The Ohio court was also aware of *Pratt Corrugated Holding, Inc. v.*

*Porter Pizza of Florida, Inc. et al.*, 8:23-cv-200-WFJ-CPT (M.D. Fla.) ("Porter FL action"). Plaintiff Pratt Corrugated Holdings, Inc. ("Pratt") filed both the Ohio and Florida cases on the same date—January 27, 2023.[1]

Both actions are based on the same facts, and each action asserts claims for fraudulent transfer. In the instant case, Pratt sued Porter OH, one of several "Porter affiliates." Dkt. 18 at 1 n.1. In the Porter FL action, Pratt sued Porter AZ, Porter FL, Porter TX, Hal Porter, his immediate family members, their respective trusts, and other entities. Porter FL action, Dkt. 47.

In July 2023, this Court denied a similar motion to dismiss in the Porter FL action. Porter FL action, Dkt. 67. The motions differ in that each cites the controlling legal authorities of the respective jurisdictions. In this action, Pratt seeks to avoid alleged fraudulent transfers made by Porter OH in violation of Ohio's Uniform Fraudulent Transfer Act ("UFTA"), Chapter 1336, Ohio Revised Code, as opposed to Florida's Uniform Fraudulent Transfer Act ("FUFTA"), Chapter 726, Florida Statutes. The amended complaint sets forth the following factual allegations, which the Court accepts as true and draws all reasonable inferences from those facts in favor of the non-movant, Plaintiff.[2]

---

[1] Pratt Corrugated Holdings, Inc. is a Delaware corporation with its principal place of business in Georgia. Dkt. 18 ¶ 6.

[2] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). The Court need not accept as true any legal conclusions "couched" as facts. *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265 (1986)); *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1185 (11th Cir. 2003) (same).

**A.     Allegations[3]**

Pratt and the "Porter Affiliates"[4] began a business relationship in July 2012.

Dkt. 18 ¶ 14.  Pratt sold corrugated paper pizza boxes to Star Pizza Box (the Porter

Affiliates).  Star Pizza Box (later known as Porter Pizza) printed logos onto the

pizza boxes.  In mid-2016, Pratt and Hal Porter began discussions about Pratt

purchasing certain assets from the Porter Affiliates.  *Id*. ¶¶ 15–17.  Although an

agreement for the acquisition was never reached, in October 2016, the parties

settled on a Master Supply and Purchase Agreement ("Supply Agreement").  *Id*. ¶

21, Dkt. 18-1.[5]

Pratt alleges that it agreed under the Supply Agreement 1) to provide the

Porter Affiliates with discounted prices for the first six months, 2) to pay rebates,

and 3) to make a one-time payment of $160,000 to be paid over the first nine

months.  *Id*. ¶ 22.  In exchange, the Porter Affiliates would 1) purchase "at least

$17 million in products annually for three years[,]" 2) grow the business "to $20

million annually over the three-year term" to be accomplished by transferring

orders from other suppliers to Pratt, and 3) allow Pratt "to participate as a joint

exhibitor under the 'Star Pizza Box' brand at the International Pizza Expo in Las

---

[3] These allegations were set forth in this Court's prior order but restated here for ease of
reference.  *See* Porter FL action, Dkt. 67 at 2–5.
[4] The Porter Affiliates include Porter OH and all of the additional entities and individuals listed
in the amended complaint.  *See*  Dkt. 18 at 1 n.1.
[5] The agreement was signed by Hal Porter as President of "Starr Pizza Box, a Florida
corporation."  Dkt. 18-1 at 6.

Vegas on March 28–30, 2017." *Id.* ¶ 23.  Pratt characterizes these as representations, warranties, and commitments from the Porter Affiliates for the sale of boxes and other products at a discounted price. *Id.* ¶¶ 24–25.

Several events occurred during the next five or so months, which caused the parties' relationship to decline.  Pratt alleges that the Porter Affiliates breached the Supply Agreement 20 days after its effective date by signing a letter of intent to sell substantially all of the Porter Affiliate's assets to WestRock Company, a competitor of Pratt. *Id.* ¶ 26.  Asserting it was unaware of the letter of intent, Pratt alleges it continued to perform under the Supply Agreement by providing $624,901 in discounts on pizza box purchases, paying $53,607 toward the $160,000 contractual payment (while being prevented from participating in the International Pizza Expo), and spending money to rebuild certain machinery to meet its obligations under the Supply Agreement. *Id.* ¶ 27.

Pratt next cites examples of the "fraud" that continued for the remainder of their relationship.  In January 2017, "Hal Porter told Pratt that he was still in negotiations to sell to a private equity group," which Pratt claims was false. *Id.* ¶ 28.  Not only was Hal Porter "moving forward with his plan to sell all of the Porter Affiliates' assets to WestRock," but the day before Hal Porter allegedly made this statement, he had "just received WestRock's draft Asset Purchase Agreement, along with an extension of the exclusivity provision in the WestRock Letter of

4

Intent prohibiting negotiations with anyone other than WestRock." *Id.* Pratt alleges that these misrepresentations and omissions constitute breaches of the Supply Agreement and caused Pratt "to continue providing economic incentives to its own detriment." *Id.* ¶ 29.

On March 13, 2017, the asset sale to WestRock closed pursuant to the Asset Purchase Agreement ("WestRock APA") between WestRock as purchaser and the Porter Affiliates as "Sellers" and the "Shareholders" named as Hal Porter, Lynda Porter, Chase Porter, Grant Porter, and each of the individuals as trustee for each one's respective trust. *Id.* ¶ 30. The assets sold (the "WestRock sale proceeds"), with certain portions to be paid out over time. *Id.* ¶¶ 3, 34. Pratt alleges the WestRock sale proceeds were thereafter transferred by some or all of the Porter Affiliates and Hal Porter to Porter OH and unknown parties (the "transfers"). *Id.* ¶ 4.

Pratt alleges that although the Supply Agreement was "specifically excluded" from the asset sale, "the purported right to receive certain rebate payments from Pratt" was assigned to WestRock. *Id.* ¶ 31. At the same time, according to Pratt, the obligations were not assigned to WestRock, and the Porter Affiliates ceased pizza box operations, and consequently stopped ordering pizza boxes and products from Pratt. *Id.* ¶¶ 32, 38. Pratt also alleges that it never

received advance notice of the asset sale, which was contrary to the terms of the Supply Agreement. *Id*. ¶ 33.

Pratt alleges that it was an UFTA creditor of Hal Porter and the Porter Affiliates on (or prior to) March 13, 2017, the date the asset sale closed. *Id*. ¶¶ 34, 36, 44, 47, 50, 55, 63, 73, 81, 89. Pratt alleges that the transfers of the WestRock sale proceeds were "made in exchange for nothing" or "no value" or "less than reasonably equivalent value" and rendered the Porter Affiliates unable to fulfill their obligations under the Supply Agreement because they were "dramatically" or "unreasonably undercapitalized" and insolvent. *Id*. ¶¶ 36, 50, 58, 66, 75, 83, 91. Pratt contends these transfers were either actually or constructively fraudulent as to Pratt because they were made when the Porter Affiliates were insolvent and when the Porter Affiliates and Hal Porter owed significant debts to Pratt. *Id*. ¶ 5. Pratt alleges the transfers were made with actual intent to hinder, delay, and defraud Pratt and their other creditors. *Id*. ¶¶ 5, 37, 51, 59, 67.

### B.   Litigation Timeline

On January 4, 2018, Porter Pizza Box of Florida, Inc. filed a lawsuit against Pratt in the Northern District of Georgia: *Porter Pizza Box of Florida, Inc. v. Pratt Corrugated Holdings, Inc.*, No. 1:18-cv-63-AT (N.D. Ga.) ("the Georgia action"). *Id*. ¶ 39. In the Georgia action, Porter Pizza Box sued Pratt for breach of the Supply Agreement by failing to pay rebates and to timely meet Porter Pizza's

purchase orders. *Id.* ¶ 40; *see also* Georgia action at docket 185. Pratt countersued Porter Pizza and added Hal Porter as a defendant. *Id.* ¶ 41; *see also* Georgia action at docket 185. Pratt alleged Porter Pizza breached the Supply Agreement when it stopped ordering products from Pratt and failed to pay invoices that came due before Porter Pizza sold the company to WestRock. *See* Georgia action at docket 4. Whether the Supply Agreement is a binding contract was decided by the Georgia district judge on January 6 this year and reiterated in a subsequent order. *Id.* at dockets 182, 191. The Georgia action is set for trial November 29, 2023. Georgia action at docket 213.

As noted earlier, both this action and the Porter FL action were filed five years after the Georgia action, and almost identical motions to dismiss the respective amended complaints were filed in both actions. A few months ago, this Court denied the motion to dismiss and stayed discovery in the Porter FL action, noting the upcoming trial of the Georgia action. Porter FL action, Dkts. 66, 67.

## II.   DISCUSSION

The Court will now consider the pending motion to dismiss. Defendant raises three grounds for dismissal: 1) Plaintiff is not a "creditor" under Ohio's UFTA as to the WestRock APA; 2) no facts are alleged that show Defendants acted with fraudulent intent to avoid a debt; and 3) Plaintiff's claims are barred by the four-year statute of limitations. Each ground will be addressed in turn.

The allegations of a complaint must contain sufficient facts, which are accepted as true and construed in the light most favorable to the plaintiff, to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Consideration should be limited "to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (citations omitted).

The Court may take judicial notice of public records such as other lawsuits and the papers filed therein in other district courts, particularly when the actions involve the same parties and concern related issues central to the plaintiff's claims and their authenticity is not challenged. *See Beepot v. J.P. Morgan Chase Nat'l Corp. Servs., Inc.*, 57 F. Supp. 3d 1358, 1366 (M.D. Fla. 2014). This type of judicial notice may be taken without converting the motion to dismiss to a motion for summary judgment. *See Universal Express, Inc. v. U.S. S.E.C.*, 177 F. App'x 52, 53 (11th Cir. 2006) (citing *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999)). The Court, however, considers these documents not for the truth of the matters alleged but only to the extent they speak for themselves. *France v. Ditech Fin., LLC*, No. 8:17-cv-3038-SCB-MAP, 2018 WL 1695405, at *3 (M.D.

Fla. Apr. 6, 2018) (citing *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994)).[6]  The Court takes judicial notice of the docket entries in the Georgia action.

## A.   Creditor under Ohio's UFTA

Defendant asserts that Pratt was not, and is not, an Ohio UFTA creditor with a claim against Porter Pizza under the facts alleged.  A creditor is "a person who has a claim."  Ohio Rev. Code § 1336.1(D).  A claim is "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."  Ohio Rev. Code § 1336.01(C).[7]

Both parties' positions rely on differing interpretations of the terms of the Supply Agreement, which is at issue in the Georgia action for breach of contract and fraud.  Defendants argue here that Pratt's asserted "claim" for "discounts it provided under the Supply Agreement, monies it spent to rebuild machinery, 'catch-up' payments it made to Porter Pizza, and lost profits" does not constitute debts "that Defendants would have owed or known about at the time of the WestRock sale [in 2017] or thereafter."  Dkt. 21 at 10.  On the other hand, Plaintiff Pratt argues and alleges that it began performing the Supply Agreement in October

---

[6] *See also Ates v. Florida*, 794 F. App'x 929, 930 (11th Cir. 2020) (*per curiam*); *Mathieson v. Wells Fargo Bank, N.A.*, 524 F. Supp.3d 1246, 1256 n.10 (M.D. Fla. 2021) (citing *Ates* and *Jones*).

[7] This language is identical to FUFTA.

9

2016 and the Porter Affiliates received benefits before the asset sale in March 2017.  Dkt. 24 at 6; Dkt. 18 ¶¶ 2, 24, 26, 27, 29, 30, 32, 38.  Pratt therefore concludes that it was a creditor as early as October 2016.

At this juncture, the Georgia federal district court has ruled against the Porter Affiliates and other Defendants with respect to the Supply Agreement's binding and enforceable nature.  If Pratt were a creditor as early as October 2016, it was a creditor both at the time of the asset sale and in advance of the transfers (which were made subsequent to the asset sale closing).  Dkt. 24 at 1–2; Dkt. 18 ¶¶ 4, 44, 47.  Assuming the factual allegations as true, the Court finds Plaintiff has sufficiently alleged that Pratt is a creditor with a claim under Ohio's UFTA.

## B.   Facts Showing Fraudulent Intent

Defendant argues that the amended complaint fails to allege facts, as opposed to legal conclusions, showing Defendants had fraudulent intent in transferring the WestRock sale proceeds.  Specifically, Pratt did not "explain how or why the Shareholder's sale of their family business in an arms-length transaction was intended to defraud a company supplier."  Dkt. 21 at 11.

In the amended complaint, Pratt alleges that the transfers were made to insiders of the Porter Affiliates when the Porter Affiliates knew of the obligations to Plaintiff and litigation was already pending, and that the Porter Affiliates were ultimately insolvent as a result of the transfers.  Dkt. 18 ¶¶ 36, 51, 59, 67.  The

Court finds that these "badges of fraud" under Ohio's UFTA suffice to pass the low bar of Rule (8)a.

### C.   Statute of Limitations

The applicable statute of limitation under Ohio's UFTA is four years after the transfer was made "or, if later, within one year after the transfer or obligation was or reasonably could have been discovered by the claimant."  Ohio Rev. Code § 1336.09.  The parties take differing positions on the timing of the transfers at issue.

It is undisputed that the closing on the asset sale occurred on March 13, 2017, well over four years before Pratt filed this lawsuit in January 2023. According to Defendant, the shareholders under the WestRock APA designated Hal Porter as the seller representative to represent them and direct the money from the sale as of the date of the WestRock APA.  Dkt. 21 at 12.  The WestRock sale proceeds were held in escrow accounts per the WestRock APA and had already been transferred to Hal Porter as the seller representative as of the closing.  *Id*. Defendant asserts that the fact that some of the funds would be distributed at a future date is irrelevant because the original transferee was the seller representative Hal Porter, not the escrow agent referenced in the WestRock APA.  *See*, *e.g.*, *Andreini & Co. v. Pony Express Delivery Servs.*, 440 F.3d 1296 (11th Cir. 2006) (holding that broker was not "initial transferee" but mere conduit when broker received funds from bankruptcy debtor and paid them according to the debtor's

11

request).  Additionally, Defendant argues that one of the escrow accounts was to be released within four months of closing.  Dkt. 21 at 12 n.9.

Pratt counters that the actual transfers by Hal Porter and the Porter Affiliates occurred after the closing on the asset sale to WestRock but not necessarily on the dates set forth in the WestRock APA.  Dkt. 24 at 10.  The amended complaint seeks relief for the transfers made "when litigation [the Georgia action filed in January 2018] was pending,"  Dkt. 18 ¶¶ 51, 59, 67.  The Georgia action was filed five years before this action.  Considering both parties' positions, the Court finds that factual disputes exist concerning the statute of limitations defense and will not resolve this matter on a motion to dismiss.

Accordingly, Defendant's motion to dismiss the amended complaint (Dkt. 21 and S-23)[8] is denied.  The motion to dismiss the initial complaint (Dkt. 12) and the motion to strike the reply (Dkt. 26) are denied.  The parties shall notify this Court upon the conclusion of the Georgia action and what, if any, judicial action is needed by this Court.

**DONE AND ORDERED** at Tampa, Florida, on September 12, 2023.

WILLIAM F. JUNG
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of record

---

[8] The sealed docket entry at S-23 is the same motion without redactions.

12